UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LETA A. READY,

    Plaintiff,

v.                                                 Case No:  2:16-cv-573-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Leta A. Ready's Complaint (Doc. 1) filed on July 21, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[1]

**I.  Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in

---

[1] Plaintiff moved "the Court to enter judgment" pursuant to Fed. R. Civ. P. 56.  (Doc. 23 at 1).  This Court's role in social security matters is governed by 42 U.S.C. § 405(g).  Accordingly, the standard of review pursuant to 42 U.S.C. § 405(g) is set forth in this Opinion and Order.

death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

**B.     Procedural History**

On February 12, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits. (Tr. at 253). Subsequently, on February 26, 2010, Plaintiff filed an additional application for supplemental security income. (Tr. at 260). In both applications, Plaintiff asserted an onset date of May 14, 2008. (Tr. at 253, 260). Plaintiff's applications were denied initially on June 29, 2010 (Tr. at 184-85), and upon reconsideration on November 5, 2010 (Tr. at 194-95). A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on January 19, 2012. (Tr. at 148-83). The ALJ issued an unfavorable decision on May 4, 2012. (Tr. at 199-213).

On August 28, 2013, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ. (Tr. at 214-18). On remand, ALJ Evans conducted an additional hearing on June 4, 2014. (Tr. at 105-47). The ALJ issued an additional unfavorable decision on November 17, 2014. (Tr. at 9-35). The ALJ found Plaintiff not to be under a disability from May 14, 2008, through the date of the decision. (Tr. at 27).

On June 28, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6). Plaintiff filed a Complaint (Doc. 1) in this Court on July 21, 2016. Defendant filed an Answer (Doc. 13) on September 30, 2016. The parties filed memoranda in support. (Docs. 23, 25, 31).

The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 17). This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2013. (Tr. at 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 14, 2008, the alleged onset date. (Tr. at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "history of fibromyalgia, history of hypothyroidism, history of migraines, neck pain, chronic back pain without radiculitis, hip pain, leg pain with numbness, and obesity." (Tr. at 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 18).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. at 19). Nonetheless, the ALJ stated:

> [Plaintiff] is able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and has unlimited ability to push and pull to the extent allowed for lifting/carrying. The claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant is limited to occasional exposure to extreme cold conditions.

(Tr. at 19).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work, finding that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. at 26). Specifically, the ALJ noted that the vocational expert ("VE") testified that Plaintiff could perform her past relevant work as a:

1) *Cashier Checker* – (Dictionary of Occupational Titles, #211.462-014) classified as light with an SVP of 3 (semi-skilled);

2) *Manager Trainee* – (Dictionary of Occupational Titles, #189.167-018) classified as light with an SVP of 6 (skilled); and

3) *Store Manager* – (Dictionary of Occupational Titles, #185.167-034) classified as sedentary with an SVP of 7 (skilled) however the claimant performed this job at the light level.

(Tr. at 26).[3]

---

[3] "SVP" is an acronym for Specific Vocational Preparation code.

In comparing Plaintiff's RFC with the physical and mental demands of her past relevant work, the ALJ found that Plaintiff is able to perform it as actually and generally performed. (Tr. at 26). The ALJ stated that Plaintiff's "ability to perform light work allows her to perform work at an equal or lesser exertional level, and she does not have a severe mental impairment or other nonexertional limitations that preclude her from performing semi-skilled or skilled work." (Tr. at 26).

Although the ALJ found that Plaintiff is capable of performing her past relevant work at step four, the ALJ proceeded to make alternative findings at step five of the sequential evaluation. (Tr. at 26). At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 26). Specifically, the ALJ noted the VE's testimony that an individual with Plaintiff's age, education, past relevant work experience, and RFC could perform representative occupations that include:

1) *Companion* (Dictionary of Occupational Titles, #309.677-010) classified as light, semiskilled work (SVP 3) with 103,546 in the nation;

2) *Sales Person of General Merchandise* (Dictionary of Occupational Titles, #279.357-054) classified as light, semi-skilled work (SVP 3); and

3) *Gate Guard* (Dictionary of Occupational Titles, #372.667-030) classified as light, semiskilled work (SVP 3) with 581,584 in the nation.

(Tr. at 27).

Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ found the VE's testimony to be consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 27).

Based on Plaintiff's RFC for the full range of light work and considering Plaintiff's age, education, and work experience, the ALJ determined that a finding of "not disabled" was

5

appropriate under the framework of Medical-Vocational Rule 202.21. (Tr. at 27). Accordingly, the ALJ concluded that Plaintiff was not under a disability from May 14, 2008, through the date of the decision. (Tr. at 27).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) The ALJ committed harmful error when he found that Ready's mental impairments were non-severe. Additionally, the ALJ's methodology used in determining the severity of Ready's mental impairments is contrary to 20 C.F.R. §§ 404.1521, 416.921.

(2) The weight the ALJ assigned the findings and opinions of Ready's treating and examining physicians is not supported by substantial evidence.

(3) The [RFC] assessment is not supported by substantial evidence because it does not account for limitations arising from Ready's need for a hand-held assistive device in violation of 20 C.F.R. §§ 404.1545(b), 416.945(b).

(Doc. 23 at 2-3). The Court addresses these issues below.

### A. Plaintiff's Mental Impairments

The Court first addresses Plaintiff's contention that the ALJ committed harmful error by finding her medically determinable mental impairments to be non-severe. (Doc. 23 at 13-17). Defendant disagrees, arguing that substantial evidence supports the ALJ's severity assessment. (Doc. 25 at 8-14).

On this issue, the Court notes that an impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). According to the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ made a determination that Plaintiff suffered from a number of severe impairments including: history of fibromyalgia, history of hypothyroidism, history of migraines,

neck pain, chronic back pain without radiculitis, hip pain, leg pain with numbness, and obesity. (Tr. at 15). Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. Rather, the only requirement is that the ALJ considered all of Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. In fact, the record shows that the ALJ specifically analyzed the severity of Plaintiff's mental impairments and found the mental impairments were non-severe. (Tr. at 15-18). Moreover, in making his RFC determination, the ALJ stated:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-Sp, 96-6p and 06-3p.

(Tr. at 19).

In sum, regardless of whether the ALJ erred in his conclusion that Plaintiff's mental impairments were non-severe, the record demonstrates that the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments. Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental impairments are severe, or if he did err, the error was harmless. *See Heatly*, 382 F. App'x at 825.

Furthermore, while Plaintiff argues the ALJ failed to include any of her mental impairments in the RFC assessment, the record shows that the ALJ properly considered Plaintiff's mental impairments in making his RFC assessment and that substantial evidence supports the ALJ's decision not to include mental impairments in the RFC determination. (*See* Tr. at 15-25). Specifically, the ALJ determined that Plaintiff's mental impairments "do not cause

8

more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (Tr. at 15-16). In making this finding, the ALJ stated that "[t]here are quite simply a lack of medical records, which would support a finding of severity with regard to the alleged mental impairments." (Tr. at 16).

On this point, Plaintiff takes issue with the ALJ's methodology. (*See* Doc. 23 at 13-14). Plaintiff contends that the ALJ erred by making his determination based on a lack of records rather than an analysis of the effects of the impairments on Plaintiff's ability to work. (*Id.*). The Court does not construe the ALJ's statement regarding the "lack of medical records" as a statement that the record is incomplete. (*See* Tr. at 16). Instead, the Court construes the ALJ's statement as concluding that the record evidence is *insufficient* to support another conclusion— *i.e.*, that Plaintiff's mental impairments are severe. (*See* Tr. at 16).

Moreover, contrary to Plaintiff's assertion, it appears that the ALJ did not fail to analyze the effects of Plaintiff's mental impairments on her ability to work. For instance, in making his severity determination, the ALJ cited medical records from multiple sources, in addition to Plaintiff's testimony. (Tr. at 16-17). Upon review, these records – including the records from Dr. Melissa Vilardebo, Bruce Crowell, Ph.D., Lee Mental Health Center, and Cheryl Kasprzak, Psy.D. – do not suggest that Plaintiff has more than mild mental impairments. For example, while Dr. Vilardebo noted that Plaintiff had poor concentration and thought block, the ALJ nonetheless noted Dr. Vilardebo's observation that Plaintiff's thought process was mostly linear. (Tr. at 16 (citing Tr. at 449)). Similarly, while Dr. Crowell's records showed some memory problems, the ALJ noted Dr. Crowell's determination that Plaintiff's thought process and content were appropriate and that there was no indication of a thought disorder. (Tr. at 16 (citing Tr. at 472)). Further, while records from Lee Mental Health Center show that Plaintiff was admitted

into a crisis unit, the ALJ nonetheless noted that Plaintiff's attention and concentration were good and that Plaintiff did not have any suicidal tendencies. (Tr. at 16-17 (citing Tr. at 798-821)). Moreover, at discharge, Plaintiff was noted to be calm and relaxed. (Tr. at 820). Likewise, while records from Dr. Kasprzak showed that Plaintiff had thought content with poverty, the ALJ noted that Plaintiff's thought process was within normal limits. (Tr. at 17 (citing Tr. at 698)). In addition, the ALJ noted Plaintiff's diagnostic testing, which suggested Plaintiff was exaggerating symptoms and limitations related to her alleged mental impairments. (Tr. at 17 (citing Tr. at 699-700)). In sum, the ALJ's finding that Plaintiff can perform "basic mental work activities" is supported by substantial evidence of record. (*See* Tr. at 16).

Further, the Court notes that the ALJ evaluated Plaintiff's mental limitations using the four functional areas of "paragraph B" criteria from 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. at 17). First, the ALJ evaluated activities of daily living. The ALJ determined that Plaintiff only had mild impairments in this area because she can do such activities as care for her children, prepare simple meals, perform household chores, and drive. (Tr. at 17-18). Second, the ALJ evaluated Plaintiff's social functioning, finding that Plaintiff only has mild limitations because she can get along with authority figures and had not been fired or laid off due to getting along with other people. (Tr. at 18). Third, the ALJ found that Plaintiff only had mild limitations with the area of concentration, persistence, and pace. (Tr. at 18). Specifically, while acknowledging that Plaintiff has some memory problems, the ALJ nevertheless cited Plaintiff's testimony as showing that she is a good historian. (Tr. at 18). Finally, the ALJ noted that Plaintiff had no episodes of decompensation, the final area of review. (Tr. at 18). Based on only having mild limitations in the first three areas and no episodes of decompensation in the fourth area, the ALJ determined that Plaintiff's mental impairments were non-severe. (Tr. at 18). Upon an

independent review of the record, including Plaintiff's testimony, the Court cannot conclude that the ALJ erred in making this determination.

Furthermore, while Plaintiff argues the ALJ erred by not including any limitations related to her mental impairments in the RFC, the record shows that the ALJ considered Plaintiff's mental impairments, including the record evidence cited above, in determining Plaintiff's RFC. (*See* Tr. at 19-25). After his review, the ALJ declined to add any additional limitations in the RFC determination related to Plaintiff's alleged mental impairments. Upon an independent review of the record including the evidence cited by the ALJ above, the Court finds that the ALJ's decision not to include additional impairments in the RFC analysis is supported by substantial evidence. Thus, because substantial evidence supports the ALJ's decision, the Court affirms on this issue.

### B. The ALJ's Review of the Medical Opinions

Plaintiff's next argument is that the ALJ erred in his consideration of the medical opinions of three physicians, Michele Candelore, Jonathan S. Daitch, and Michael Rosenberg. (Doc. 23 at 17). Plaintiff argues that all three doctors "opined that the symptoms resulting from [Plaintiff's] impairments resulted in limitations equivalent to a less than sedentary level of exertion." (*Id.* (citations to the record omitted)). Plaintiff argues that, contrary to the ALJ's finding, these doctors' "findings were not inconsistent with the record and are supported by diagnostic testing." (*Id.*). Thus, Plaintiff argues that the ALJ erred by assigning these opinions little weight. (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's decision. (Doc. 25 at 20-23). Defendant argues that the ALJ fully considered the opinion evidence and

properly gave these opinions little weight because the opinions were not well supported or consistent with the record evidence as a whole. (*Id.*).

In reviewing this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). When evaluating a medical opinion, the factors an ALJ must consider include: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Further, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

The Court evaluates the medical opinions at issue in turn below.

        *i.*     *Dr. Michele Candelore and Dr. Jonathan S. Daitch*

Plaintiff first argues that the ALJ erred in his review of the opinions of Plaintiff's treating physicians, Dr. Candelore and Dr. Daitch. (Doc. 23 at 17-18). Plaintiff specifically argues that Dr. Candelore's and Dr. Daitch's findings are not inconsistent with the record and that the ALJ chose to ignore the doctor's treatment relationship with Plaintiff. (*Id.*).

Upon review, however, the Court finds that Plaintiff has not explained how the ALJ erred in finding that Dr. Candelore's and Dr. Daitch's records are inconsistent with the record or that the ALJ ignored the doctor's treatment relationship. In her briefing, Plaintiff only recounts the types of conditions these doctors treated. (*Id.*). Because Plaintiff only states what types of treatment these doctors performed instead of explaining how these doctors' opinions are consistent with other medical evidence of record, Plaintiff did not met her burden of showing that the ALJ erred. The Court has no basis to conclude that the ALJ erred.

Notwithstanding this finding, the Court nevertheless finds that the ALJ had "good cause" to discount Dr. Candelore's and Dr. Daitch's opinions, including their opinions that Plaintiff has limitations equivalent to less than a sedentary level of exertion. (*See* Tr. at 924-25, 927-28).[4] As stated above, good cause exists to discount the treating physician's opinion when (1) a treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *See Phillips*, 357 F.3d at 1240-41. In this instance, the record evidence supports the ALJ's contrary conclusion that Plaintiff is capable of more than sedentary work—*i.e.*, light work. (*See* Tr. at 19).

For instance, the ALJ cited objective medical evidence – including diagnostic imaging studies showing only minimal findings – in support of his RFC finding that Plaintiff can perform light work. (*See* Tr. at 23). As noted by the ALJ, an X-ray of the hip from May 2008 showed no arthritis and no dislocations or fractures. (*See* Tr. at 20 (citing Tr. at 612)). Similarly, an MRI from July 2008 of the lumbar spine showed essentially normal findings and no evidence of nerve root compression. (*See* Tr. at 20 (citing Tr. at 606-607)). Diagnostic records from February 2011 also showed only minor issues. (*See* Tr. at 21 (citing Tr. at 528)). In fact, the attending physician at that time could not find any particular pathology from imaging that would cause Plaintiff's pain. (*See* Tr. at 21 (citing Tr. at 528)). Additional imaging from October and November 2011 showed only mild issues. (*See* Tr. at 21 (citing Tr. 495-96, 499-501)).

---

[4] "Sedentary work" is defined by the regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567, 416.967. Additionally, the regulations state "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

Likewise, imaging from October 2012 also show only mild findings. (*See* Tr. at 22 (citing Tr. at 901-902)). In sum, because the objective medical evidence, including diagnostic imaging studies, appears to show only minimal findings, this provides substantial evidence in support of the ALJ's RFC finding that Plaintiff can perform light work. (*See* Tr. at 19).

Additionally, in making his RFC finding, the ALJ also cited Plaintiff's conservative treatment history, the significant treatment gaps in Plaintiff's medical history, and Plaintiff's daily activities in support of a finding that Plaintiff can perform a reduced range of light work. (Tr. at 19-25). These reasons are not rebutted by Plaintiff. (*See* Doc. 23 at 17-19; Doc. 31 at 1-4). Thus, these reasons also provide substantial evidence in support of the ALJ's RFC findings.

Furthermore, while Plaintiff argues that the ALJ ignored the doctors' treating relationship with Plaintiff, (Doc. 23 at 18), the Court notes that treatment relationship is only one factor an ALJ weighs when considering the opinion evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, another important factor an ALJ considers is supportability. *Id.* Here, however, the Court finds that the record evidence supports a contrary conclusion.

In sum, the Court finds that the record evidence supports a contrary finding and that the opinions of Dr. Candelore and Dr. Daitch were not bolstered by the evidence. Thus, good cause exists to discount Dr. Candelore's and Dr. Daitch's opinions. *See Phillips*, 357 F.3d at 1240-41. Accordingly, the Court finds that substantial evidence supports the ALJ's decision and that the ALJ did not err on this ground.

    ii.  *Dr. Michael Rosenberg*

Plaintiff next contends that the ALJ erred in finding that the opinion of Dr. Rosenberg, a consultative examining physician, was only entitled to little weight. (Doc. 23 at 18-19). Plaintiff argues that "the examination and findings from Dr. Rosenberg, who is a specialist in neurology,

should be given greater weight than the opinions of non-specialists." (*Id.* at 19 (citing 20 C.F.R. §§ 404.1527(d)(5), 416.927 (d)(5))). Plaintiff argues that the ALJ erred by "assigning only 'little weight' to Dr. Rosenberg's opinions and by giving 'great weight' to Glenn Bigsby, a non-examining state agency examiner." (*Id.*).

Upon review, however, the Court finds that the ALJ articulated sufficient reasons for giving the opinion of Dr. Rosenberg little weight. *See Winschel*, 631 F.3d at 1179. For instance, while Dr. Rosenberg opined that Plaintiff had significant limitations in lifting and carrying, (Tr. at 689), the ALJ cited Plaintiff's mild diagnostic findings, conservative treatment history, the significant treatment gaps in Plaintiff's medical history, and Plaintiff's daily activities in support of a finding that Plaintiff can, instead, perform a reduced range of light work. (*See* Tr. at 19-25). These reasons – unrebutted by Plaintiff – provide substantial evidence in support the ALJ's RFC findings. Because substantial evidence supports a contrary conclusion to Dr. Rosenberg's opinion, the Court cannot find that the ALJ erred in the weight he assigned to the opinion.

Furthermore, while specialization is one factor an ALJ considers in assigning weight to the medical evidence, it is not the only factor. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Other factors include supportability, length of the treatment relationship, and frequency of examination. *Id.* As a result, specialization – standing alone – is insufficient to grant more weight to Dr. Rosenberg's opinion. *See id.* Moreover, as indicated above, the medical evidence of record supports a contrary conclusion to Dr. Rosenberg's findings that Plaintiff can only perform sedentary work. (*See* Tr. at 689-94). Thus, although the state agency medical consultant, Glenn Bigsby, may not have had the same level of specialization as Dr. Rosenberg, specialization is insufficient to overcome the other evidence of record that supports Bigsby's conclusions that

Plaintiff can perform more than sedentary work. (*See* Tr. at 462-69). Accordingly, the Court cannot conclude the ALJ erred on this ground.

        **C.**      **Plaintiff's Need for a Handheld Assistive Device**

Plaintiff's final contention is that the ALJ's RFC assessment is not supported by substantial evidence because it does not account for limitations arising from Plaintiff's need for a hand-held assistive device in violation of 20 C.F.R. §§ 404.1545(b), 416.945(b)." (Doc. 23 at 19). Plaintiff argues that, while the ALJ evaluated Plaintiff's need for a cane, the ALJ erred in his conclusions on this issue. (*Id.* at 20).

First, Plaintiff specifically takes issue with the ALJ's conclusion that "[m]ore than one physician did not believe her cane was medically necessary." (*Id.* (citing Tr. at 23)). Plaintiff states that, while Dr. Candelore firmly asserted that Plaintiff required a hand-held assistive device in order to ambulate independently, other physicians' opinions of record – including those of Dr. Eshan M. Kibria and Dr. Rosenberg – reflected uncertainty. (*Id.* (citing Tr. at 439, 443)). Plaintiff contends that "Dr. Kibria merely stated that [Plaintiff's] use of a cane did not 'seem' medically necessary." (*Id.* (citing Tr. at 443)). Plaintiff further notes that another doctor – Dr. Rosenberg – provided inconsistent findings regarding the need for a hand-held assistance device. (*Id.* (citing Tr. at 685, 690)). For instance, Dr. Rosenberg opined that Plaintiff's use of a cane "did not appear to be medically necessary," and he also checked a box "no" in response to a question of whether a cane is medically necessary. (*Id.* 20-21 (citing Tr. at 685, 690)). Nonetheless, Plaintiff notes that, in another section, Dr. Rosenberg stated that Plaintiff required "the use of a cane to ambulate" and could only ambulate 10 minutes without a cane. (*Id.* (citing Tr. at 685, 690)). Plaintiff argues that "Dr. Rosenberg's contradictory findings and Dr. Kibria's

17

ambivalence cannot be logically equivalent to what the ALJ characterizes as 'more than one physician' concluding that Ready's cane is not medical necessary." (*Id.* at 21 (citing Tr. at 23)).

Additionally, Plaintiff takes issue with the ALJ's finding that "there are no objective medical records to support [Plaintiff's] use of the cane." (*Id.*). Plaintiff argues that the medical evidence of record establishes "regular treatment for hip, back and bilateral leg pain frequently affecting her gait." (*Id.* (citing Tr. at 421-437, 492-529, 544-98, 682-94, 707-97, 822-925, 929-42)). Thus, Plaintiff argues the ALJ's conclusion is inconsistent with the record. (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's decision. (Doc. 25 at 19). Furthermore, Defendant argues that, even if the ALJ erred in failing to include an additional limitation for Plaintiff to use a cane, any error would be harmless. (*Id.* (citing Tr. at 139)). Specifically, Defendant argues that the VE identified jobs that Plaintiff could perform even if additional limitations, including the use of a cane, were included in Plaintiff's RFC. (*See id.* (citing Tr. at 139)).

Upon review, the Court agrees with Defendant and finds that the ALJ did not err on this issue. As an initial matter, the Court specifically disagrees with Plaintiff's contention that the record fails to show that more than one physician did not believe a cane was medically necessary. First, the record shows that Dr. Kibria stated that Plaintiff's "[c]ane does not seem medically necessary." (Tr. at 443). While there might be a hint of uncertainty in this statement, Dr. Kibria's statement certainly does not establish the converse—*i.e.*, that a cane *is* medically necessary. *See id.* Furthermore, while Dr. Rosenberg made seemingly contradictory findings about Plaintiff's need for a cane, (*see* Tr. at 685, 690), it cannot be disputed that Dr. Rosenberg specifically checked a box indicating that the use of a cane is *not* medically necessary. (Tr. at 690). After the ALJ reviewed this evidence, he found that "[m]ore than one physician did not

believe her cane was medically necessary." (Tr. at 23). The Court cannot say that the ALJ erred in making this determination.

Furthermore, even if the ALJ did err on this ground, any error would be harmless. As noted above, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78. Here, Plaintiff failed to show how any potential error by the ALJ was harmful because Plaintiff has not shown how any need for a cane would contradict the ALJ's ultimate finding that Plaintiff is not disabled. Specifically, a review of the transcript from the hearing shows that the VE identified jobs that Plaintiff could perform even if additional limitations, including the use of a cane, were included in Plaintiff's RFC. (Tr. at 139). As a result, even if the ALJ failed to include the additional limitation in Plaintiff's RFC that a cane would be required, this error was harmless because it would not change the ALJ ultimate finding that Plaintiff is not disabled. *See Denomme*, 518 F. App'x at 877-78. Accordingly, the Court affirms as to this issue.

### III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 27, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties